The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Carlos Ray McCOMBS,
Defendant-Appellant.

No. 79CA0523.

Colorado Court of Appeals,
Div. II.

Jan. 29, 1981.

Rehearing Denied March 12, 1981.

Certiorari Denied June 15, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., James F. Carr, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Alex C. Tejada, Deputy State Public Defender, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, Carlos Ray McCombs, appeals his conviction of second degree burglary. We affirm.

On October 25, 1979, at 12:15 a. m., two police officers responded to a silent burglar alarm at a Skaggs Drugstore in Aurora, Colorado. The store had closed approximately three hours earlier. When they arrived, the officers saw a car enter the area and park on an unpaved portion of a parking lot that adjoined the drugstore. They first speculated that the car contained some "parkers." After the officers found the doors of the drugstore secure from the outside, they returned to the parking lot, where they noted defendant removing items from two shopping carts and loading them into the parked car. The officers approached the defendant, and in reply to their inquiry, defendant indicated that he was loading the items into his car. Defendant was then asked to produce some identification.

During this time, one of the officers walked around the vehicle and shined his flashlight onto the shopping carts and into the car. He noted that the items in the carts, and in defendant's car, had Skaggs Drugstore price tags on them. After defendant produced some identification, the other officer shined his flashlight into defendant's vehicle and he too saw the Skaggs Drugstore price tags. Defendant gave no response when asked if the items belonged to him. He was then placed under arrest for investigation of burglary and advised of his rights. It was subsequently determined that the items had been taken from the drugstore, and apparently, a forced exit had been made from the building.

Defendant first contends that there was no basis for the officers to make an investigatory stop. We do not agree.

In order to make a valid investigatory stop:

"(1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose."

*Stone v. People,* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971); *see also People v. Severson,* 39 Colo.App. 95, 561 P.2d 373 (1977). Here, the stop conforms to the requirements of *Stone.* Defendant's acts, in light of all the circumstances, were sufficient to arouse reasonable suspicion that he had committed a crime. *Cf. Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2437, 61 L.Ed. 357 (1979). Additionally, the purpose and character of the detention was reasonable.

Defendant next contends that viewing the inside of his vehicle was unreasonable and exceeded the scope of an investigatory stop. We disagree.

"It is neither against the law for a police officer to look inside a car, nor to use a

flashlight to do so." *People v. Haggart,* 188 Colo. 164, 168, 533 P.2d 488, 491 (1975). *See also People v. Shriver,* 186 Colo. 405, 528 P.2d 242 (1974). Therefore, the subsequent seizure by the officers of the items in the car was permissible under the plain view doctrine. *Haggart, supra.*

■ we find no merit in defendant's contention that the police did not have probable cause to arrest him. Based on information and observation made before and during the investigatory stop, the officers had probable cause to arrest the defendant.

Defendant also argues that the trial court erred in admitting evidence of two experiments. We find no error.

At trial, a detective of the Aurora Police Department testified that he conducted an experiment in which he measured the time it took him to push two shopping carts from the point of the burglar's exit from the Skaggs Drugstore to the area of the parking lot where defendant had been seen. The detective also testified that, as another experiment, he measured the time it took him to walk from that point in the parking lot to a point near the defendant's apartment, get in a car, and drive back to the parking lot. These experiments were conducted and introduced to show that the time for defendant to complete the acts conducted in the experiment and arrive back in the parking lot was approximately the same time that elapsed between the sounding of the burglar alarm and the police officers' arrival on the scene. Defendant argues that, because the experiments were based on a hypothetical and disputed reconstruction of the crime, it was impossible to determine whether conditions of the experiments were substantially similar to those at the time of the occurrence of the crime.

■ For evidence of an experiment to be admissible it must aid rather than confuse the jury in its resolution of the issues, and it must tend directly to establish or disprove a material issue in the case. *American Tobacco Co. v. United States,* 147 F.2d 93 (6th Cir. 1945), *aff'd,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). It is true that the conditions under which an experiment is conducted are required to be substantially similar to those existing at the time of the occurrence, *Kling v. City and County of Denver,* 138 Colo. 567, 335 P.2d 876 (1959); however, this requirement does not render an experiment inadmissible because it is based on a disputed reconstruction of that crime. *People v. Sexton,* 192 Colo. 81, 555 P.2d 1151 (1976) (No error in trial court's admission of a photograph that demonstrated, based on a disputed theory of the case, the view that the defendant had of the roadway.) Rather, the admission or exclusion of evidence of a experiment rests largely in the discretion of the trial court. *People v. Sexton, supra.*

■ Here, evidence of the experiments was introduced to help prove the prosecution's theory of the case. That theory was that defendant hid in the store until after closing time, filled the shopping carts with items from the store and forced open a door from the inside. The defendant then pushed the carts to a dirt portion of the parking lot, walked to his car that was parked near his apartment and returned to the parking lot at the same time the officers arrived. The prosecution's theory of the case was a material issue, and evidence as to the time it would have taken the defendant to have completed the transaction was relevant to that theory. *See Hamby v. People,* 109 Colo. 572, 128 P.2d 993 (1942).

■ Although there was some new construction in the area and weather conditions differed from those at the time of the crime, these variations were taken into consideration in the experiments and were not sufficient differences to require rejection of the evidence. It is not necessary to establish that conditions under which an experiment is conducted be identical to those existing at the time of the occurrence of the crime. *Kling, supra.* Minor variations go to the weight of the evidence rather than to its admissibility. Therefore, the trial court did not err in its admission of the evidence of the experiments. Also, contrary to defendant's contention, there was sufficient

foundation for the experiments to be admitted in evidence.

Judgment affirmed.

SMITH and KIRSHBAUM, JJ., concur.