No. 24190.

WILLIE RAY MCGREGOR *v.* THE PEOPLE OF THE STATE OF COLORADO.

(490 P.2d 287)

Decided November 8, 1971.

Rollie R. Rogers, State Public Defender, J. D. Mac-Farlane, Chief Deputy, T. Michael Dutton, Deputy, Edward H. Sherman, Public Defender for the City and County of Denver, Isaac Mellman, Special Assistant, David G. Mantor, Assistant, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Aurel M. Kelly, Assistant, for defendant in error.

*En Banc.*

Howard E. Purdy, District Judge,* delivered the opinion of the Court.

The defendant, Willie Ray McGregor, was convicted of robbery and sentenced to the penitentiary. He now brings error here.

The facts out of which the charge arose follow. In mid-morning on May 17, 1967, one Harry Cunningham was robbed in his jewelry store on East Colfax Avenue in Denver. He was tied up while the robbery took place, was struck and kicked by defendant's accomplice re-

sulting in serious injuries, causing him to be hospitalized. The investigating officers took various police photographs to the hospital, and from these Cunningham identified the defendant as one of the participants. The defendant was personally exhibited to Cunningham while in the hospital. Upon seeing the defendant, Cunningham identified him as one of the robbers.

The defendant urges this court to reverse his conviction upon the following grounds:

1. That the trial court erroneously permitted in-court identification by Cunningham which was tainted by the hospital identification.

2. The trial court erroneously instructed the jury on principal and acessory.

3. That the trial court committed error in the giving of an instruction on the defendant's defense of *alibi.*

4. That error was committed by the trial court in refusing and denying defendant's request for a continuance interposed at the opening of the trial.

5. That defendant was prejudiced by a denial of his Motion for a Mistrial arising from a remark by the trial judge, allegedly made before the jury at a recess, but not in the record, to the effect that trial delays were being caused by defense counsel.

We address ourselves to these allegations of error in the order set forth above.

### I.

█ THE IDENTIFICATION. The trial judge held an in-camera hearing for the purpose of eliciting testimony to which the tests set forth in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), could be applied. This in-camera testimony revealed that on May 17, 1967, Harry Cunningham's jewelry store was robbed by two armed bandits, neither of whom wore masks. The duration of the robbery was about fifteen minutes and Cunningham had ample opportunity during that time to observe both robbers. Although Cunningham was soundly beaten by one of the brigands, he was able soon after

the crime to pick out the pictures of the two men from the many photographs displayed to him by the Denver Police Department. The photograph of this defendant which Cunningham selected did not reveal that the defendant had an ear deformity, although Cunningham had observed the deformity during the robbery and mentioned it to the police officers. The defendant did in fact have such an ear deformity, which Cunningham said was unlike any other he had ever seen.

Based on Cunningham's photograph identification, the defendant was arrested in California and returned to Denver, whereupon the defendant was taken to Cunningham's hospital room and the confrontation between the two took place some six months after the commission of the crime. At this hospital confrontation Cunningham was asked if he had ever seen this man before, to which he responded: "He's one of the two men that robbed me. This was the man who took the jewelry from the safe."

The in-camera evidence showed that this confrontation between Cunningham and the defendant took place in the presence of two detectives and a nurse; that no other Negro males were present at that time and that the defendant was not handcuffed or otherwise restrained.

Based upon this in-camera evidence, the trial judge made findings: a. that the hospital identification was improperly conducted and that testimony regarding the hospital identification was inadmissible by law; b. that the in-court identification by Cunningham was proper, was independent of the hospital identification, *was not tainted by the hospital identification,* and that the evidence as to in-court identification was admissible. We agree. This evidence was clearly sufficient to meet the tests set forth in *United States v. Wade, supra,* to warrant the trial court's admission into evidence of Cunningham's in-court identification. *See also Phillips v. People,* 170 Colo. 520, 462 P.2d 594 (1969); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; and *Hanks v. United States,* 388 F.2d 171 (10th Cir. 1968).

## II.

■ PRINCIPAL AND ACCESSORY. The defendant argues that the trial court erred in giving jury Instruction No. 15 on accessory in the language of C.R.S. 1963, 40-1-12, the contention being that the evidence did not warrant such an instruction.

The testimony of the victim is clear that he was approached while in his jewelry store by two men, one of them being the defendant, who pulled guns and said, "This is a stick-up," and "We want your valuables." The defendant then went back to the safe with a bag and started removing merchandise from the safe, while the other robber beat Cunningham, threatened to kill him and ultimately tied him with a rope to assure their escape with the loot.

■ It is axiomatic that where two or more persons engage jointly in the commission of a crime, the giving of an accessory instruction is proper. *Tanksley v. People,* 171 Colo. 77, 464 P.2d 862; *Cruz v. People,* 147 Colo. 528, 534, 364 P.2d 561 (1961). In *Schreiner v. People,* 146 Colo. 19, 24, 360 P.2d 443 (1961), in language peculiarly appropriate to the case at bar, this court said:

". . . Where, as here, two persons are acting in concert, one holding the victims at bay, the other emptying the cash register, an instruction on accessory is in order. In the absence of such an instruction the jury might conceivably acquit the one who held the victims at bay in the mistaken belief that since he did not *personally* take the money from the register he was therefore innocent of the charge of robbery. It has long been the law in Colorado that an accessory who stands by and aids in the perpetration of a crime may properly be charged as a principal, and in the case of co-defendants it is unnecessary to spell out which one is the principal and which the accessory, nor is it necessary to characterize and classify the specific acts of each. *See Block v. People,* 125 Colo. 36, 240 P.2d 512; *Erwin v. People,* 126 Colo. 28, 245 P.2d 1171; *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5."

314

## III.

■ THE ALIBI. On behalf of the defendant, testimony was presented through various witnesses, including Billie Jefferson, who testified regarding a trip she made with the defendant to the State of Texas where they visited her mother during the time the alleged robbery herein took place. The defendant testified in his own defense. There was also rebuttal testimony by various police officers who testified as to the issuing of a traffic ticket to the defendant during the time it was claimed he was in Texas. Based upon this testimony the trial court gave Instruction No. 13 in which the jury was told:

"The Court instructs the jury that in this case what is known in law as an 'alibi,' that is, that the defendant was at another place at the time the crime charged in the information was committed, is relied upon by the defendant; and the court instructs the jury that such a defense is as proper and legitimate, *if proved,* as any other, and all the evidence bearing upon that point should be carefully considered by the jury, and if, in view of all the evidence, the jury have any reasonable doubt as to whether the defendant was in some other place when the crime was committed, they should give the defendant the benefit of the doubt and find him not guilty."

The defendant submits that the language in Instruction No. 13 could easily leave the jury with the impression that it was incumbent upon the defendant *to prove* his alibi, thus shifting the burden of proof to the defendant and depriving him of his presumption of innocence. We disagree. The defendant's objections to this instruction are fully met by the decisions of this court in *Ortega v. People,* 162 Colo. 358, 426 P.2d 180 (1967) and *Foster v. People,* 56 Colo. 452, 139 P. 10 (1914). If anything, the instruction was more beneficial than detrimental to the defendant.

## IV.

■ THE CONTINUANCE. The defendant concedes

that the voir dire of the jury reveals no prejudice to the defendant arising from the trial court's ruling denying a continuance. There being no showing of prejudice, this assignment of error is disposed of by *Lofton v. People,* 168 Colo. 131, 450 P.2d 638 (1969); *Moore v. People,* 164 Colo. 222, 434 P.2d 132 (1967); *Sharp v. People,* 90 Colo. 356, 9 P.2d 483 (1932); *Abshier v. People,* 87 Colo. 507, 289 P. 1081 (1930), holding that the granting or denial of a Motion for Continuance is within the sound discretion of the trial court.

## V.

██ THE MISTRIAL. The defendant alleges that during the course of the trial, the court advised the jury that certain delays were due to defense counsel. This statement was not reported by the court reporter, but it is alleged that it was made by the trial judge after announcing a recess but while the jury was still in the room. It is elementary that the granting or denial of a mistrial is discretionary with the trial court and the ruling will not be disturbed on review in the absence of a showing of abuse of discretion. The defendant concedes that the error, if any, was cured by the trial court's later instruction to the jury that:

"... But I want to assure you that neither the District Attorney nor the defense counsel caused the delay. It was the Court's delay that kept you waiting, and along that line, I might mention that yesterday I think the Court made an unfortunate remark to defense counsel which implied that he was delaying things. You are, of course, not to pay any attention to such remark. The Court did not wish to imply that defense counsel was doing anything he shouldn't be doing, and any type of remark from the Court, you are to disregard it completely. The important thing is that Mr. McGregor has a fair trial and a remark such as that shouldn't affect you in any way and you shouldn't allow it to affect you in any way in giving Mr. McGregor a fair trial."

316

We find no error.

The judgment is affirmed.

WILLIAM G. NAUGLE, District Judge,* participating.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON not participating.

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.